## Lowther v. Blair Distilling Co.
(Decided Dec. 4, 1936.)

C. E. SCHINDLER, H. S. HOREN and P. K. McELROY for appellant.

W. H. SPRAGENS and C. C. BOLDRICK for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing in part and affirming in part.

Appellant sued for 2,500 shares of the capital stock of the appellee company or $3,750, which he alleged to be its value. He recovered a judgment for $500 with right to appellee to satisfy the judgment by delivery to him of 1,000 shares of its capital stock. This judgment satisfied no one. Each party sought a new trial. Both motions were overruled. Lowther appeals, and the Blair Distilling Company has prosecuted a cross-appeal.

On November 27, 1933, Mr. F. P. Sadowski of Detroit, Mich. passed through Louisville, Ky. and inquired of Mr. Lowther about some sites suitable for distillery purposes. Lowther on the next day sent him descriptions of four sites. The next day Sadowski wired Lowther he would be there on Saturday, December 2nd. He came, and Lowther exhibited to him and his associates two pieces of property that did not suit them.

The next day, December 3rd, Lowther went with them to see the "Thixton-Millet" property. The party returned to Detroit, without giving Lowther any definite understanding.

On Saturday, December 9, 1933, Sadowski, made a contract with Mr. N. O. Blair, the owner of this "Thixton-Millet" property for the purchase of it.

On January 26, 1934, Sadowski and three others organized the appellee corporation under the laws of Michigan, Sadowski taking two-thirds of the 110,000 shares of capital stock subscribed.

On February 1, 1934, Sadowski gave Lowther his personal check for $100, upon his claim for services and for the balance they signed a writing in which Sadowski agreed within 90 days to assign Lowther 2,500 shares of the capital stock of the Blair Distilling Company.

The evidence is utterly irreconcilable. Sadowski was then a member of appellee's board of directors and may then have been its president. On June 29, 1934, he wrote Lowther, a letter signed "Blair Distilling Company, by F. P. Sadowski, President."

On March 19, 1934, N. O. Blair and wife executed to appellee a deed for the "Thixton-Millet" property. The stock was never delivered to Lowther and this suit resulted.

We have here some well-established facts. The contract with Blair for the purchase of this property and the contract with Lowther to pay him for his services leading up to the purchase were both made with Sadowski. The corporation had not come into existence when the first contract was made and it was less than a week old when the written memorandum between Lowther and Sadowski was signed by them. This writing was more in the nature of a settlement than a contract for services. The services of Lowther, except as to

some unimportant detail, were completed then and had been so for about 60 days.

Thus we find Sadowski had made two precorporate contracts for the appellee, one for the purchase of property which the appellee accepted and on which it has erected its distillery, the other was to pay Lowther for finding this property for them and arranging for its purchase. To the average reasonable man, it looks like they should take the bitter with the sweet. Even Sadowski seems to accept this in principle but he shelters behind his associates, whom he describes as hard-headed businessmen, who think Lowther should look to the seller for his commission. In other words, they propose to accept and ratify the purchase made by Sadowski but refuse to ratify and accept the contract with Lowther by which in less than a week they got the sort of property they wanted. They do not say the arrangement with Lowther was unknown to them. They simply propose to make a new trade. From the articles incorporating appellee, it appears the appellee was incorporated by Sadowski and his associates, but if any new blood came in, the most natural question for such newcomers to ask is, ''What have you got and how did you get it?'' This was a matter they knew or should have known and should not now refuse to carry out.

We are persuaded by 14 C. J. p. 257, sec. 290 and the Kentucky and other authorities cited in support of that text, that the appellee could not accept one of these contracts without the other. Both were parts of the activities and undertakings by which Sadowski and his associates got the property on which they have built their plant and, having got the benefit of one, they must accept the liability of the other for both were contracts within the power of appellee to make.

The courts are by no means agreed about the power of a promoter, as Sadowski was, to bind a corporation by a contract made for it before it has come into existence. Usually, it is held promoters have no such power. See Ehrich on Promoters, sec. 46. The Supreme Court of Illinois in Gent v. Manufacturers' & Merchants' Insurance Company, 107 Ill. 652, says it is like holding a child bound upon a contract made for it by its parents while it was yet en ventre sa mere.

Where, as in this case, the corporation accepts the benefit of a precorporate contract made by a promoter,

it takes it cum onere. Ehrich on Promoters, secs. 59 and 60. That is the rule in this state. See Morton v. Hamilton College, 100 Ky. 281, 38 S. W. 1, 18 Ky. Law Rep. 765, 35 L. R. A. 275.

. For further discussion and cases see Oakes v. Cattaraugus Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544, and notes under it. Lowther was entitled to his 2,500 shares of stock.

The court will require appellee to deliver to Lowther 2,500 shares of its stock and, if it shall be unable or shall refuse to do that, the court will by evidence ascertain the value of 2,500 shares of appellee's stock and award Lowther a judgment for that sum. The judgment is reversed on the original and affirmed on the cross-appeal.